IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DEWAYNE A. MOORE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 3:18-CV-1491-MAB |
| | ) |
| **JEFF BULLARD, DARRIN RICE, and** | ) |
| **NATHAN FRANKLIN,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motions for summary judgment filed by Defendants Jeff Bullard, Darrin Rice, and Nathan Franklin (Docs. 46, 57). For the reasons explained below, the motions are granted.

### BACKGROUND

On August 14, 2018, Plaintiff Dewayne A. Moore brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging that he was wrongfully arrested and prosecuted for a murder charge in state court in Jefferson County, Illinois by Jeff Bullard, a Detective Captain with the Mt. Vernon Police Department, and Darrin Rice, an assistant State's Attorney in Jefferson County (Doc. 1; Doc. 10). A threshold review of the complaint was conducted pursuant to 28 U.S.C. § 1915A (Doc. 10). Based on Plaintiff's allegation that Bullard and Rice fabricated evidence against him, Plaintiff was permitted to proceed on a claim that Bullard and Rice arrested and detained him on murder charges

without probable cause, in violation of the Fourth Amendment (Doc. 10). Plaintiff was later permitted to add Nathan Franklin, a detective with the Mt. Vernon Police Department, as a Defendant (Doc. 37).

Defendants Bullard and Franklin filed their motion for summary judgment on October 2, 2019, arguing that Plaintiff's claim is barred by the statute of limitations and also fails on the merits (Docs. 46, 47). Plaintiff filed a response in opposition to the motion on October 15, 2019 (Doc. 50). Defendants Bullard and Franklin did not file a reply brief.

Defendant Rice filed his motion for summary judgment on January 3, 2020, arguing that Plaintiff's claim fails on the merits (Docs. 57, 58, 63). Plaintiff filed a response in opposition to the motion (doc. 72), to which Defendant Rice filed a reply (Doc. 73).

## FACTS

At all times relevant to this matter, Defendant Jeff Bullard was a Detective Captain with the Mt. Vernon Police Department (Doc. 47-1). Defendant Nathan Franklin was a Detective with the Mt. Vernon Police Department (Doc. 47-2). And Defendant Darrin Rice was a Jefferson County Assistant State's Attorney (Doc. 63, p. 1).

Cortez Pickett was murdered on August 30, 2015 in Mt. Vernon, Illinois (Doc. 50, pp. 2, 5). On or about February 18, 2016, Plaintiff was arrested without a warrant for Pickett's murder (Doc. 58-1; *see also* Doc. 47-6). The following day, Jefferson County Circuit Judge Jo Beth Weber determined that probable cause existed for the arrest and Plaintiff was detained on $3,000,000 bail (Doc. 47-6; Doc. 58-1).

Five days later, on February 24, 2016, Jefferson County State's Attorney Douglas Hoffman filed an Information charging Plaintiff with two counts of first-degree murder

in the death of Pickett (Jefferson County Case No. 16-CF-88) (Doc. 47-4; Doc. 58-1). On February 26th, Plaintiff appeared in Jefferson County Circuit Court by video conference and was advised of the charges of first-degree murder (Doc. 58-1). A preliminary hearing was initially scheduled for March 15th but was rescheduled by agreement for March 16th and then again rescheduled by agreement for March 22nd (Doc. 72, p. 24). At the State's request and over the objection of Plaintiff, the preliminary hearing was rescheduled again for March 24th (*Id.*). However, before the hearing was held, Jefferson County Assistant State's Attorney Darrin Rice presented the state's murder case against Plaintiff to a grand jury on March 24th (Doc. 47-5; Doc. 63). The only evidence presented to the grand jury was the testimony of Detective Franklin (Doc. 63). The grand jury returned a true bill charging Plaintiff with two counts of murder in the death of Pickett (Doc. 47-5; Doc. 63).

In November 2016, Plaintiff went to trial on the murder charges and was found not guilty by a jury (Doc. 1, Doc. 10).[1]

## DISCUSSION

Summary judgment is proper when the moving party "shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Factual disputes are genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the

---

[1] The proceedings held in the Circuit Court of Jefferson County, Illinois are matters of public record available on an online database at:
https://www.judici.com/courts/cases/case_search.jsp?court=IL041025J. The Court takes judicial notice of the dates set forth on the state court docket. *See, e.g., Guaranty Bank v. Chubb Corp.,* 538 F.3d 587, 591 (7th Cir. 2008) ("[A] court is of course entitled to take judicial notice of judicial proceedings[.]"); *United States v. Doyle,* 121 F.3d 1078, 1088 (7th Cir. 1997) (taking judicial notice of district court's docket sheet).

evidence presented, and they are material only if their resolution might change the suit's outcome under the governing law." *Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013) (citation and internal quotation marks omitted). In deciding a motion for summary judgment, the court's role is not to determine the truth of the matter, and the court may not "choose between competing inferences or balance the relative weight of conflicting evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014) (citations omitted); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). Instead, "it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Hansen*, 763 F.3d at 836.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. CONST. Amend. IV. The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause." *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 918 (2017). *Accord Lewis v. City of Chicago*, 914 F.3d 472, 476 (7th Cir. 2019) ("[T]he general rule [is] that Fourth Amendment seizures are 'reasonable' only if based on probable cause to believe that the individual has committed a crime." (quoting *Bailey v. United States*, 568 U.S. 186, 192 (2013))). A claim for unlawful pretrial detention prior to, as well as subsequent to, the start of legal process is governed by the Fourth Amendment. *Manuel*, 137 S. Ct. at 918, 920. In other words, the Fourth Amendment prohibits government officials from arresting a person without probable cause prior to any legal process, meaning without a warrant or the formal onset of a criminal proceeding. *Manuel*, 137 S. Ct. at 918. *See also*

*Williams v. City of Chicago*, 733 F.3d 749, 756 (7th Cir. 2013) ("To prevail on his constitutional claim for false arrest, Williams must show there was no probable cause for his arrest.) The Fourth Amendment also prohibits government officials from detaining a person without probable cause after the initiation of formal legal process. *Manuel*, 137 S.Ct. at 918; *Lewis v. City of Chicago*, 914 F.3d 472, 477 (7th Cir. 2019).

### A. STATUTE OF LIMITATIONS

Plaintiff claims that he was arrested and detained pending trial without probable cause in violation of the Fourth Amendment. Under Illinois law, the statute of limitations for this type of claim is two years. *Manuel v. City of Joliet, Illinois*, 903 F.3d 667, 668 (7th Cir. 2018), *cert. denied sub nom. City of Joliet, Ill. v. Manuel*, 139 S. Ct. 2777 (2019). Defendants Bullard and Franklin argue that the statute of limitations began to accrue at the time of Plaintiff's arrest in February 2016, and therefore this lawsuit is untimely because it was not filed until August 2018, well beyond the two year statute of limitations (Doc. 47, pp. 1–2). However, Defendants' argument is based on outdated and overruled law. The Seventh Circuit determined in September 2018 that "[t]he wrong of detention without probable cause continues for the duration of the detention" and Fourth Amendment claim for wrongful detention "accrues when the detention ends." *Manuel*, 903 F.3d at 670. Neither party indicated in their briefs when Plaintiff was released from custody (*see* Docs. 47, 50). But the docket in the state court case indicates that Plaintiff was found not guilty of the murder charges on November 23, 2016, and Plaintiff testified at his deposition that he stayed in jail for "a couple days" following his acquittal and was then released (Doc. 58-2, p. 8). Assuming Plaintiff's testimony is accurate, then this lawsuit, which was filed

in August 2018, was timely. The portion of Defendants' motion for summary judgment regarding the statute of limitations is denied.

## B. Merits of Plaintiff's Claim

Defendants Bullard and Franklin both attested that they did not personally arrest Plaintiff (Doc. 47-1, 47-2). Detective Franklin also attested that he did not make the determination as to whether probable cause existed to arrest Plaintiff for murder (Doc. 47-2, p. 3). In other words, he did not make the call to arrest Plaintiff. According to Plaintiff, Detective Bullard is the one who gave the command to arrest him (Doc. 58-2, pp. 6–7). Even if the Court assumes that Defendants Bullard and Franklin were at least partially responsible for Plaintiff's arrest, they argue that probable cause justified the arrest (Doc. 47).

Probable cause is an absolute defense to claims of wrongful or false arrest under the Fourth Amendment in section 1983 suits. *Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017) (citing *Williams v. City of Chicago*, 733 F.3d 749, 756 (7th Cir. 2013)). "Probable cause exists at the time of an arrest if 'the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing . . . that the suspect has committed, is committing, or is about to commit an offense.'" *Ewell*, 853 F.3d at 919 (quoting *Williams*, 733 F.3d at 756). "A court evaluates probable cause not with the benefit of hindsight, and not on the facts as perceived by an omniscient observer, but on the facts as they appeared to a reasonable person in the defendant's position, even if that reasonable belief turned out to be incorrect." *Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617, 622 (7th Cir. 2010) (citation omitted). *See also Ewell*, 853

F.3d at 919 ("Probable cause is gauged from the vantage point of a reasonable officer facing the same situation.")

Defendants Bullard and Franklin attested that the Mount Vernon Police Department "spent countless hours" investigating Cortez Pickett's murder (Docs. 47-1, 47-2). The investigation file contains hundreds of pages of documents, video statements, photographs, evidence reports, etc. (*Id.*). The police interviewed dozens of people and ruled out at least seven other potential suspects (*Id.*). Both Defendants Bullard and Franklin attested that the investigation in this case "developed very strong evidence" and "led to the clear conclusion" that Plaintiff was the perpetrator of Cortez Pickett's murder (Docs. 47-1, 47-2). Specifically, the investigation showed that Plaintiff was a friend of Pickett's and they had been arguing on the day Pickett was killed (*Id.*; *see also* Doc. 47-3, Doc. 50; Doc. 58-2, p. 5). Multiple people told detectives that Plaintiff was alone with Pickett inside Pickett's house when they heard a gunshot (Docs. 47-1, 47-2; Doc. 47-3; Doc. 50). Plaintiff then came outside and got one of the witnesses and they went back into the house (*Id.*). That witness saw Pickett lying dead on the floor (*Id.*). Plaintiff's car was later found crashed with evidence inside that had been burned (*Id.*). Laboratory reports showed a DNA match for Pickett's blood on a partially burnt blanket in the trunk of Plaintiff's car (*Id.*).

Plaintiff's complaint said little about the alleged lack of probable cause for his arrest and pretrial detention (Doc. 1), and his response to the motions for summary judgment said even less (Doc. 50). He simply alleged that the Detectives were repeatedly told that someone else committed the murder and there was no physical evidence linking

him to the murder, but the police arrested him and Assistant State's Attorney Rice pursued the charges against Plaintiff anyway (Doc. 1, pp. 2, 4). In his response brief, Plaintiff did not point to any specific errors, misstatements, or alleged misconduct by Defendants Bullard or Franklin (*see* Doc. 50). At his deposition, Plaintiff explicitly admitted that he had no evidence that Detective Bullard manufactured or withheld any evidence (Doc. 58-2, p. 9). Plaintiff claimed that Franklin withheld evidence and was not honest when he testified before the grand jury, however, he was unable and/or refused to provide any specifics (*Id.* at pp. 9, 17).

Simply put, the undisputed evidence is that Defendants Bullard and Franklin were justified in believing Plaintiff had murdered Cortez Pickett. Plaintiff did not make any argument or set forth any evidence to create a triable issue of fact as to whether probable cause existed *at the time* of Plaintiff's arrest. Consequently, no jury could find in Plaintiff's favor and Defendants Bullard and Franklin are entitled to summary judgment.

As for Defendant Rice, he secured Plaintiff's indictment by the grand jury. Rice attested that the only evidence presented to the grand jury was the testimony of Defendant Nathan Franklin (Doc. 63, p. 2). Rice further attested that, to his knowledge, Franklin testified consistent with the Mt. Vernon Police Department's investigation of Pickett's murder (Doc. 63, p. 2). He further attested that he did not falsify or fabricate any evidence, knowingly or recklessly present false evidence to the grand jury, withhold exculpatory evidence, or in any way attempt to skew the investigation or mislead the grand jury (Doc. 58, p. 6; Doc. 63, pp. 1–3). Plaintiff admitted at his deposition that he did not know of any conversations Mr. Rice and Detective Franklin had before or after the

grand jury proceedings (Doc. 58-2, p. 17). And he did not know if Mr. Rice instructed Detective Franklin to withhold information from the grand jury or to lie to the grand jury (*Id.*). And he had no knowledge that Mr. Rice manufactured any false evidence (*Id.* at p. 19).

In his response brief, Plaintiff argued—for the first time—that Defendant Rice manipulated the criminal proceedings by postponing the preliminary hearing after Plaintiff was charged by Information so that Rice could present the case to the grand jury to determine probable cause rather than holding a preliminary hearing (Doc. 72). Plaintiff asserts that once he was charged by Information, the Illinois Constitution required that a preliminary hearing be held to determine probable cause and Defendant Rice "circumvented Plaintiff's constitutional right to a preliminary hearing—an adversarial proceeding held in a public arena before a judge well-versed in the law—and, instead, sought out and obtained an indictment from a grand jury—an ex parte proceeding held in secret before a panel of ordinary citizens not necessarily astute in the law or familiar with what constitutes probable cause" (*Id.* at pp. 3–4). Plaintiff claims that proceeding before a grand jury rather than holding a preliminary hearing "produ[ed] a tactical advantage for the State" (*Id.* at p. 6).

To begin with, Plaintiff cannot "amend his pleadings by argument in opposition to summary judgment nor introduce new theories of liability in opposition to summary judgment." *Colbert v. City of Chicago*, 851 F.3d 649, 656 (7th Cir. 2017) (quoting *Whitaker v. Milwaukee Cty., Wis.*, 772 F.3d 802, 808 (7th Cir. 2014)). Furthermore, Plaintiff cannot proceed on a claim under § 1983 based on a purported violation of the Illinois

Constitution. *E.g., Bell v. City of Country Club Hills*, 841 F.3d 713, 718 (7th Cir. 2016); *White v. Olig*, 56 F.3d 817, 820 (7th Cir. 1995). Rather, it is well-established that § 1983 provides a right of action only for violations of rights protected by the federal Constitution and federal laws. *Bell*, 841 F.3d at 718; *White,* 56 F.3d at 820. Finally, Plaintiff's argument that he was entitled to a preliminary hearing under the Illinois Constitution has already been rejected by Illinois courts on a number of occasions.

The Illinois Constitution requires "a prompt probable-cause determination of the validity of the charge," which can be made either by a judge in a preliminary hearing or by indictment by a grand jury. ILL. CONST. art. I, §7; *see also People v. Smith*, 450 N.E.2d 1242, 1243 (Ill. App. Ct. 1983) (citing *People v. Kline*, 442 N.E.2d 154, 159 (Ill. 1982)). Both procedures serve the function of determining probable cause. *People v. Franklin*, 398 N.E.2d 1071, 1074 (Ill. App. Ct. 1979). A preliminary hearing is only required if the State pursues the prosecution solely by way of an Information. *People v. Rush*, 414 N.E.2d 899, 902 (Ill. App. Ct. 1980). But "[o]nce a defendant is properly indicted, the necessity for a preliminary hearing to establish probable cause is vitiated." *Franklin*, 398 N.E.2d at 1073. Most importantly, there is nothing that prohibits the State from "filing an information and then, prior to the preliminary hearing, obtain[ing] grand jury indictments, thus avoiding the necessity of the preliminary hearing." *People v. Mennenga*, 551 N.E.2d 1386, 1390 (Ill. App. Ct. 1990). *Smith*, 450 N.E.2d at 1243 ("It is a well-established rule that a defendant has no constitutional right to a preliminary hearing for determination of probable cause because a State may, consistent with due process, dispense with the preliminary hearing procedure and initiate the criminal proceeding directly by grand

jury indictment."); *Rush*, 414 N.E.2d at 902 (explaining State is not precluded "from proceeding initially by way of information, and then later by way of indictment without holding a preliminary hearing" and holding "there was no constitutional error in failing to give the defendant a prompt preliminary hearing where he was indicted by the Grand Jury prior to the time for that hearing."); *Franklin*, 398 N.E.2d at 1073 ("A state may, consistent with due process, dispense with the preliminary hearing procedure and authorize the prosecutor to initiate the criminal proceedings directly.")

For these reasons, Defendant Rice is entitled to summary judgment on Plaintiff's claim.

## CONCLUSION

The motion for summary judgment filed by Defendants Jeff Bullard and Nathan Franklin (Doc. 46) and the motion for summary judgment filed by Defendant Darrin Rice (Doc. 57) are **GRANTED.** Plaintiff's Fourth Amendment claim is **DISMISSED with prejudice** and judgment will be entered in Defendants' favor. There being no claims or Defendants remaining in this action, the Clerk of Court is **DIRECTED** to enter judgment and close this case on the Court's docket.

**IT IS SO ORDERED.**

DATED: October 20, 2020

s/ Mark A. Beatty
MARK A. BEATTY
**United States Magistrate Judge**